UNITED STATES of America,
Plaintiff-Appellee,

v.

Herman ACKERMAN,
Defendant-Appellant.

No. 81–1571.

United States Court of Appeals,
Fifth Circuit.

May 2, 1983.

Linda Broocks, Houston, Tex., for defendant-appellant.

Ronald C.H. Eddins, Asst. U.S. Atty., Fort Worth, Tex., for plaintiff-appellee.

Before BROWN, GOLDBERG and HIG-
GINBOTHAM, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This case began with a foolish decision and ends, we hope, with a wise one. Herman Ackerman presented a false declaration form to U.S. Customs officials while attempting to bring some imported jewelry into the United States. In September of 1981, he was convicted by a jury of having violated 18 U.S.C. § 542[1] and was sentenced to a three-year period of probation. Ackerman now appeals his conviction, contending that the district court erred (1) by instructing the jury that the false statements on his customs declaration form were material, (2) by admitting testimony concerning statements he made to a Customs official before he received *Miranda* warnings, (3) by misleading the jury by reading an edited version of the criminal statute, and (4) by giving the jury a supplemental instruction which discussed the meaning of the term "motive." We reject Ackerman's arguments and affirm the conviction.

On July 15, 1981, Ackerman, a jewelry importer, was returning from Mexico to New York City, his home, with newly purchased Mexican jewelry worth $11,341.88. Before landing at his first United States port of entry, Dallas/Fort Worth Regional Airport, he filled out one Customs declaration form showing the true value of the jewelry and another showing a value of $242. Ackerman had both the original and several blank invoices from Mexican merchants with whom he had done business. He filled out two invoices to substantiate the $242 figure.

At Customs, Ackerman deliberately made the wrong choice. He presented the false declaration form and produced the false invoices in support of the form.[2] The Customs inspector, Terry Cromer, became suspicious and invited Ackerman to accompany him to a secondary inspection room, where he asked him to empty his pockets. At that point Ackerman stated, "These items are all free of duty." Ackerman objects to the admission of this statement at trial.

After Ackerman emptied his pockets, Cromer discovered the truthful declaration form, the authentic Mexican invoices, and the remaining blank invoices. He then explained to Ackerman the civil penalties concomitant to the presentation of a false dec-

1. **§ 542. Entry of goods by means of false statements**

Whoever enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance, or makes any false statement in any declaration without reasonable cause to believe the truth of such statement, or procures the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement, whether or not the United States shall or may be deprived of any lawful duties; or

Whoever is guilty of any willful act or omission whereby the United States shall or may be deprived of any lawful duties accruing upon merchandise embraced or referred to in such invoice, declaration, affidavit, letter, paper, or statement, or affected by such act or omission—

Shall be fined for each offense not more than $5,000 or imprisoned not more than two years, or both.

Nothing in this section shall be construed to relieve imported merchandise from forfeiture under other provisions of law.

The term "commerce of the United States", as used in this section, shall not include commerce with the Philippine Islands, Virgin Islands, American Samoa, Wake Island, Midway Islands, Kingman Reef, Johnston Island, or Guam.

2. Ackerman did not intend to cheat the United States government out of any customs duties, as the particular imported Mexican jewelry was duty-free. Since he did not have certificates of origin for the jewelry, he would have been required to place the goods in bond for several days to await the arrival of the certificates. Ackerman wanted to avoid this delay, as an important customer—apparently one who could make or break his business—wanted the jewelry right away. As he admitted at trial, Ackerman was aware that commercial shipments of imported jewelry worth $250 or less could be introduced into the United States

laration.[3] Ackerman replied by words to the effect of "Can't we take care of this problem?" Ackerman objects also to the admission of this second statement at trial.

Approximately one hour later, special agents[4] with Customs arrived. One of these agents advised Ackerman of his rights, in accordance with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Ackerman chose to answer the agents' questions and admitted having presented a false declaration. Ackerman does not object to the introduction at trial of these statements made after he was informed of his rights.

### The Court's Instruction as to Materiality

In *U.S. v. Ven-Fuel,* 602 F.2d 747 (5th Cir.1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980), this Court reversed a corporation's conviction for violations of 18 U.S.C. § 542, the statutory section under which Ackerman was convicted. In *Ven-Fuel* we wrote, with one eye cocked toward the *Norton Anthology of American Literature,*

> We think it likely that fraud took place,
> But materiality was not shown in this case.
> So while the Government will no doubt be annoyed,
> We declare the conviction null and void.

602 F.2d at 749.

Although 18 U.S.C. § 542 does not expressly require that a fraudulent or false statement be material, we recognized in *Ven-Fuel* "that for the statute to make sense, materiality must be read into it." 602 F.2d at 752. We set out the four essential elements which the government must prove in order to secure a conviction under 18 U.S.C. § 542: (1) the defendant made a false statement, (2) which was material and

which (3) he knew to be false, by which (4) he introduced or attempted to introduce imported goods into interstate commerce. 602 F.2d at 752–53.

In this case, the court instructed the jury that Ackerman's false statements were material. The court stated,

> The making of a false declaration or statement to U.S. Customs is not an offense unless the declaration or statement made is a material declaration or statement. The issue of materiality, however, is not submitted to you for your decision but rather is a matter for the decision of the Court. You are instructed that the declaration charged in the indictment is a material declaration.

Ackerman contends that the instruction impermissibly directed a verdict against him on an element of the charged offense. We certainly agree with Ackerman that "[n]o fact, not even an undisputed fact, may be determined by the Judge." *Roe v. U.S.,* 287 F.2d 435, 440 (5th Cir.), *cert. denied,* 368 U.S. 824, 82 S.Ct. 43, 7 L.Ed.2d 29 (1961). We hold, however, that the materiality requirement of § 542 involves a legal issue to be decided by the court. This interpretation of the statute conforms to that given to 18 U.S.C. § 1001, which proscribes the making of false statements to government agencies. As with § 542, the courts have read a requirement of materiality into § 1001, the test being whether a statement "has a natural tendency to influence, or was capable of influencing, the decision of the tribunal in making a determination required to be made." *U.S. v. Krause,* 507 F.2d 113, 118 (5th Cir.1975). Under § 1001, "[t]he materiality of a statement rests upon a factual evidentiary showing but the ultimate decision is a legal one." *U.S. v. Beer,* 518 F.2d 168, 172 (5th Cir.

---

duty-free, without the production of certificates of origin.

**3.** At a *Jackson v. Denno* hearing, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), conducted to determine the admissibility of Ackerman's statements, Cromer testified that at this point he informed Ackerman "that by presenting false invoices that he could lose the merchan-

dise, the imported merchandise and that he could be fined its value in the United States." Apparently he was referring to the civil penalty provisions of 19 U.S.C. § 1592.

**4.** Special agents with Customs are responsible for investigating possible violations of Customs laws and regulations.

1975). Likewise, under § 542, the ultimate decision as to whether a false statement is material is a legal rather than a factual issue. *Ven-Fuel,* 602 F.2d at 753. *Cf. United States v. Johnson,* 700 F.2d 163 (5th Cir.1983) (now pending on rehearing en banc) (in criminal conviction for interstate transportation of a falsely made security and for causing interstate telephone calls to be made pursuant to a scheme of securities fraud, court properly determined that documents in question were securities as a matter of law.)

■ The trial court was correct in concluding that the false statement in Ackerman's declaration was indeed material. Ackerman deliberately undervalued his jewelry by over $11,000. His false statement was deliberately designed to change the way in which his goods were handled at Customs. It was capable of influencing and had a natural tendency to influence the Customs agent. If successful in his deception, Ackerman would have evaded the requirement that he produce certificates of origin for his imported goods or else place those goods in bond. The statement is not rendered immaterial by the fact that the goods were duty-free, moreover, for § 542 can be violated "whether or not the United States shall or may be deprived of lawful duties." 18 U.S.C. § 542.

### Statements Made Prior to Miranda Warnings

*Miranda* requires that prior to custodial interrogation an accused must be advised of his constitutional rights to remain silent, to consult with counsel and to have a lawyer appointed if he is financially or otherwise unable to obtain one. Any waiver of these rights must be made intelligently and knowingly. Statements obtained in violation of those requirements are not admissible in court.

*Miranda* applies only to statements elicited in the course of custodial interrogation.

*Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706; *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). In *Innis,* the Supreme Court stated that

the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation.

446 U.S. at 300, 100 S.Ct. at 1689, 64 L.Ed.2d at 307.

Ackerman objects to the use at trial of two statements made by him before he was given the *Miranda* warnings.

■ He first complains of the use of his statement to Inspector Cromer, "These items are duty-free." This comment was made almost immediately after Ackerman, Cromer and Lupe Ybarra, a second Customs inspector, had entered the secondary inspection room, just after Cromer had asked Ackerman to empty his pockets. We conclude that at that time Ackerman was not in custody within the compass of *Miranda.*

The second statement, testified to by Cromer, was to the effect of "Can't we take care of this?"[5] Ackerman made the statement after Cromer had searched his pockets and had found the true Mexican invoices, the accurate declaration form, and the blank invoices. Recognizing the great latitude which customs officers have in conducting border investigations, we are inclined to doubt Ackerman's claim that he was in custody at the moment the second statement was made. We do not reach that question, however. Even if Ackerman was in custody at that time, and even if the statement was made in reply to interrogation or its "functional equivalent," *Innis,* 446 U.S. at 301, 100 S.Ct. at 1689, 64 L.Ed.2d at 308, its admission clearly was harmless error.

In *United States v. Salinas,* 439 F.2d 376 (5th Cir.1971), this Court held that being

---

**5.** Apparently Inspector Cromer considered this statement to have been a bribery attempt on Ackerman's part. The trial court concluded that it might just as easily have been an attempt by Ackerman to clear up the matter by paying duty or putting the merchandise in bond.

subjected to a routine Customs inspection and border search does not place an individual in custody for *Miranda* purposes.

Thousands of persons enter the country daily and are subject to some degree of detention while their luggage is searched and they are asked routine questions concerning citizenship, destination, whether they have items to declare, questions regarding contraband, and the like. To hold that questioning of these types or routine border searches of luggage place a person "in custody" within the meaning of *Miranda* would unduly distort that case. [citations omitted] However, when the border search or detention becomes more than routine, such as when a person is discovered to be concealing suspicious materials, or when a person is taken to a private room and strip searched as here, a different outcome obtains. [citations omitted]

439 F.2d at 379–80. *See also United States v. Warren,* 578 F.2d 1058 (5th Cir.1978) (en banc), *modified in part,* 612 F.2d 887 (5th Cir.) (en banc), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980); *United States v. Garcia,* 496 F.2d 670 (5th Cir. 1974), *cert. denied* 420 U.S. 960, 95 S.Ct. 1347, 43 L.Ed.2d 436 (1975).

The questioning conducted by Inspector Cromer which led to the secondary examination clearly was routine and did not call for *Miranda* warnings. It was the same process of questioning and temporary detention undergone by "thousands of persons ... daily." Nor did *Miranda* warnings become necessary when the secondary examination began, for in *United States v. Henry,* 604 F.2d 908 (5th Cir.1979), we held squarely that "[t]he referral of a person entering this country to a secondary inspector is part of the 'routine' border interrogation and does not, in and of itself, focus on the person so as to require a *Miranda* warning." 604 F.2d at 920. Ackerman's statement that the items were duty-free occurred at the very beginning of that secondary inspection, before Inspector Cromer had done anything beyond asking Ackerman to empty his pockets.

This Court employs a four-factor test in determining whether a defendant was "in custody" during interrogation. Those factors are: (1) whether probable cause to arrest existed; (2) the subjective intent of the law-enforcement officer; (3) the subjective belief of the defendant; and (4) whether the investigation had focused on the defendant as a criminal suspect. *Warren,* 578 F.2d at 1071–72. We do not know what Ackerman himself believed, but it is clear from the record that none of the other three factors were present at the time the first statement was made. Ackerman was not in custody and no *Miranda* warnings were required.

Ackerman urges strongly that the second statement came at a moment when the investigation had progressed beyond the routine. Once the concealed papers were discovered, he argues, he was effectively in custody for *Miranda* purposes. As we have indicated, however, we need not decide that question. Nor do we consider the question of whether Ackerman was interrogated before making that statement. We are convinced that any error on the part of the trial court in admitting the testimony was harmless.

It is well settled that the admission of statements obtained in violation of *Miranda* may constitute harmless error. *Harryman v. Estelle,* 616 F.2d 870 (5th Cir.) (en banc), *cert. denied* 449 U.S. 860, 101 S.Ct. 161, 66 L.Ed.2d 76 (1980). In determining whether constitutional error was harmless, an appellate court must

"review the facts of the case and the evidence adduced at trial" to determine the effect of the unlawfully admitted evidence "upon the other evidence adduced at trial and upon the conduct of the defense." [*Fahy v. Connecticut* ] 375 U.S. [85] at 87, 84 S.Ct. [229] at 230, 231 [11 L.Ed.2d 171]. A court must then decide whether, absent the so-determined unconstitutional effect, the evidence remains not only sufficient to support the verdict but so overwhelming as to establish the

guilt of the accused beyond a reasonable doubt.

616 F.2d at 876.

Here the other evidence against Ackerman unquestionably was so overwhelming as to establish his guilt beyond a reasonable doubt. At trial, Special Agent Wallace testified that after having been advised of his rights, Ackerman admitted having filled out and presented the false declaration form.[6] The false declaration form itself, along with the false invoices and other documentary evidence, was before the jury. Ackerman himself admitted at trial to having filled out and presented the false declaration form and to having done so in order to circumvent usual Customs procedures. There is no suggestion in the record that the single statement which may have been wrongfully admitted into evidence had any effect whatsoever on the other evidence adduced at trial or upon the conduct of the defense.[7]

■ After having deliberated for three hours, the jury asked to be read Inspector Cromer's testimony concerning Ackerman's second statement.[8] While this indicates that the jury took note of that testimony, it does not alter the conclusion that the other record evidence was so overwhelming as to establish Ackerman's guilt beyond any reasonable doubt. Ackerman admitted to the essential elements of the crime, other than materiality, both to Special Agent Wallace during post-*Miranda* questioning and at trial. The documentary evidence of the truth of those confessions was before the jury. In light of those compelling facts, the admission of the statement "Can't we take care of this problem?" was harmless error if it was error at all.

### Instruction on 18 U.S.C. § 542

■ The trial judge read portions of 18 U.S.C. § 542 in his instruction to the jury.[9] Ackerman complains that the edited version of the statute may have misled the jury into convicting him for filing false invoices or making false oral statements rather than for presenting a false declaration form, as charged in the indictment. We find no merit in Ackerman's argument. Recently, in *Jordan v. Watkins,* 681 F.2d 1067 (5th Cir.1982), we recognized that portions of a trial court's charge cannot be read in isolation in determining whether the charge had a prejudicial effect on the jury. "The standard of review that must be applied is whether the court's charge as a whole was correct." 681 F.2d at 1076.

The instructions, taken as a whole, made it plain to the jury that Ackerman was charged only with filing a false declaration form. The trial judge read the indictment to the jury. He enumerated the four essential elements required to be proven beyond a reasonable doubt in order to establish a violation of the statute. The instructions created no risk of confusion on this score. If the trial court erred in reading the irrelevant portions of the statute, no prejudice inured.

---

6. Ackerman does not object to the admission of that testimony at trial.

7. Ackerman himself took the stand after the trial judge had decided to admit the challenged statements. Ackerman does not argue, however, and the record does not show, that Ackerman's decision to testify was in any way affected by the judge's decision.

8. Cromer testified as follows:

    Q. All right, sir, after you had taken these documents out of the defendant's coat, what was the next thing that happened that you recall, Mr. Cromer?

    A. I notified—I am sorry, the supervising inspector, Ms. Love, knocked on the door. She entered and at this point Mr. Ackerman made a statement to the effect, "Can't we take care of this problem," something to that effect.

9. The trial judge stated:

    The indictment is brought pursuant to a Federal statute Title 18, United States Code, Section 542, which reads in pertinent part as follows:

      Whoever ... enters or introduces, or attempts to enter or to introduce, into the commerce of the United States any imported merchandise by means of any ... false invoice, declaration, ... or ... statement ... or makes any false statement in any declaration ... shall be

    guilty of an offense against the laws of the United States of America.

## Instruction on Motive

 The jury requested supplemental instructions on the definitions of "innocent reason" and "bad purpose." The trial judge incorporated a discussion of "motive" in his response to that question.[10] Ackerman claims that he was prejudiced by this supplemental instruction and that his counsel was denied the right to argue the point before the jury.

We find no error. Ackerman does not contend, nor could he, that the instruction erroneously stated the law. Ackerman was not prejudiced, nor was his counsel precluded from arguing the issue, as the closing argument for the defense discussed the question of motive. The trial judge deemed it necessary to distinguish "motive" from "innocent reason" and "bad purpose," in order to clarify the meaning of the terms "knowingly" and "willfully," as used in his original charge.[11] We find that the supplemental instruction falls within the trial judge's "broad discretion in formulating his charge." *United States v. Ruppel,* 666 F.2d 261, 274 (5th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 3487, 73 L.Ed.2d 1369 (1982).

We find no error on the trial court's part. Ackerman's conviction stands.

AFFIRMED.

---

10. The court instructed:

In answer to your question, you are instructed that the terms "innocent reason" and "bad purpose" as used in the Court's Charge refer to particular mental states of the defendant at the time the incident occurred.

Intent or mental state, and motive should never be confused. Motive is what prompts a person to act, or fail to act. Intent or mental state refers only to the state of mind with which the act is done or omitted.

Personal advancement and financial gain are two well-recognized motives for much of human conduct. These laudable motives may prompt one person to voluntary acts of good, another to voluntary acts of crime.

Good motive alone is never a defense where the act done or omitted is a crime. So, the motive of the accused is immaterial except insofar as evidence of motive may aid determination of state of mind or intent.

You are further instructed that "innocent reason" as used in the definition of "knowingly" refers to a particular mental state of the defendant at the time the incident occurred. The defendant acted with "innocent reason" if he did not realize what he was doing and was unaware of the nature of his conduct. As stated in the Court's Charge, mistake or accident are examples of innocent reasons.

You are further instructed that "bad purpose" as used in the definition of "willfully" refers to another particular mental state of the defendant at the time the incident occurred. The defendant acted with "bad purpose" if he purposefully disobeyed or disregarded a known legal duty.

11. In the original charge, the trial judge instructed the jury that an element of the offense was that Ackerman must have acted knowingly and willfully. He continued,

An act is done "knowingly" if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason. The purpose of adding the word "knowingly" was to insure that no one would be convicted for an act done because of mistake, or accident, or other innocent reason.

An act or a failure to act is "willfully" done, if done voluntarily and intentionally, and with specific intent to do something the law requires to be done; that is to say, with bad purpose either to disobey or to disregard the law.