**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Angel CORCUERA–VALOR and Jose G.
Berlanga–Garcia,
Defendants–Appellants.**

**No. 89–1733.**

United States Court of Appeals,
Fifth Circuit.

Aug. 20, 1990.

Arvel (Rod) Ponton, III, El Paso, Tex., for defendant-appellant Corcuera–Valor.

Charles Louis Roberts, Joseph (Sib) Abraham, Jr., El Paso, Tex., for defendant-appellant Berlanga–Garcia.

Michael W. McCrum, Le Roy Morgan, Jahn, Asst. U.S. Attys., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before THORNBERRY, GEE, and SMITH, Circuit Judges.

GEE, Circuit Judge:

The United States indicted and convicted appellants Angel Corcuera–Valor and Jose

---

**28.** —— U.S. at ——, 109 S.Ct. at 2205–06.

**29.** *See supra* section A.

**30.** *Pearce,* 395 U.S. at 726, 89 S.Ct. at 2081.

G. Berlanga–Garcia under the part of 18 U.S.C. § 542 making it a federal offense to "enter or introduce into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice...." We reaffirm that this part of § 542 includes a materiality element; and because the evidence at trial did not show that the false invoices submitted by the defendants were the actual "means" by which their goods were introduced into the United States, we must reverse their convictions.

### Facts

In 1984, Mose and Angelynn Haralson founded HARCO, a United States clothing manufacturing business. As a part of their operations, the Haralsons shipped cut fabric into Mexico for assembly at manufacturing plants colloquially known as "maquiladoras".[1] After the maquiladoras assembled the fabric into shirts, the Haralsons imported the finished goods back into the United States.

Defendant Corcuera–Valor owned Industrias Corcuera del Vestido in Torreon, Mexico, and defendant Berlanga–Garcia owned Maquilas y Confeciones Bronco S.A., both maquiladoras that sewed garments for HARCO. The Haralsons negotiated with each defendant for a particular contract price for their assembling work, and then together with them conspired to submit invoices to the United States Customs Service which falsely stated a contract price substantially lower than the actual price. Customs agents used this lower price to calculate the duty owed by HARCO on the imported goods. HARCO would then issue each defendant two checks—one for the amount of the price declared on the invoices given to the customs service and payable to the maquiladora, and another for the additional contract amount and payable either to that defendants' personal accounts or to a pre-arranged third party.

Corcuera–Valor and Berlanga–Garcia were convicted of violating 18 U.S.C. § 542 and of accompanying conspiracy counts under 18 U.S.C. § 371. Each received a sus-

pended sentence of two years imprisonment on each count, fines of $10,000 and assessments of $300. Both men filed a timely notice of appeal, arguing that, among other errors, the government failed to prove the materiality element required by the part of § 542 under which they were indicted. We agree with this contention and thus need not decide defendants' other points of error.

### Discussion

Section 542 imposes criminal sanctions on:

> Whoever enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise *by means of any* fraudulent or false invoice, declaration, affidavit, letter, paper, or *by means of* any false statement, or fraudulent practice of appliance, or makes any false statement in any declaration without reasonable cause to believe the truth of such statement, or procures the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement, whether or not the United States shall or may be deprived of any lawful duties.... (emphasis added)

Our Circuit interprets the part of § 542 that refers to goods entering the United States "by means of" a false statement as requiring the government to prove, as an element of the offense, the materiality of the false statement—that but for the false statement the merchandise would not have been allowed to cross United States borders. *United States v. Ven–Fuel, Inc.*, 602 F.2d 747, 748 (5th Cir.1979). In *Ven–Fuel* we held that the government failed to prove the materiality of a false statement made in connection with the importation of oil because the falsity had "no significance whatsoever with respect to the actual importation of the oil" but referred only to a collateral oil storage arrangement.

We are not alone in our interpretation of § 542. The Ninth Circuit also requires that

---

**1.** Literally, gristmills.

the false statement materially relate to the importation of the goods. In *United States v. Rose*, 570 F.2d 1358 (9th Cir.1978), for example, the Court reasoned:

If the false statement is not material, it cannot be said that the attempt was made to import the merchandise "by means of" the statement.

570 F.2d at 1363. More recently, that Court has held that the falsity must be significant to the actual admission of goods, not merely to the importation process in general. *United States v. Teraoka*, 669 F.2d 577 (9th Cir.1982).

The government relies on judicial interpretations of 19 U.S.C. § 1592, the civil counterpart of § 542, to contend that § 542 does not require a showing of materiality. It cites *United States v. Ven–Fuel, Inc.*, 758 F.2d 741 (1st Cir.1985), a case in which the First Circuit held, without deciding the existence of a materiality requirement, that the false statements were material in the case before them. 758 F.2d at 762. The First Circuit focused on whether the government had proved materiality in a civil context—an analysis inapplicable to the criminal statute before us today.

The government contends that our interpretation of the "by means of" clause eviscerates the purpose of § 542—to prevent importers from lying to customs officials about the nature of their merchandise. This argument is groundless—the government is free to prosecute without proof of materiality under the latter part of § 542, which imposes criminal liability purely for *making* a false statement in a customs declaration. The government, unfortunately, indicted Corcuera–Valor and Berlanga–Garcia under the first part of § 542, failing to read further to the part of § 542 that requires no proof that the false statement was the reason the goods were allowed to enter the United States.

Thus, absent evidence of a "logical nexus" between the false invoices and the actual importation of the shirts, the government cannot prove its case under the first part of § 542. *Ven–Fuel*, 602 F.2d at 749 (5th Cir.1979). We conclude that they did not establish this necessary nexus. The ultimate decision whether a false statement is material is a legal rather than a factual issue. *United States v. Ackerman*, 704 F.2d 1344, 1348 (5th Cir.1983). Uncontroverted evidence at trial showed that the invoices in question, although undeniably false, were not "the means" by which the defendants obtained the necessary clearance to import their goods. The government's own witness, a United States Customs import specialist, testified that the amount reported on the invoice, whether accurate or not, did not affect whether garments such as those imported by the defendants could enter the United States.

The government maintains that the false invoices submitted by the defendants were material under the analysis in *Ackerman* because they were "deliberately designed to change the way in which [the] goods were handled at Customs." 704 F.2d at 1348. In *Ackerman*, however, the false statement allowed imported jewelry to pass through customs without a certificate of origin and prevented the placement of the illegally imported goods in bond. Unlike the defendants in *Ackerman*, defendants here were able to import their shirts regardless of the price on the invoice—the actual value of the shirts would have imposed no additional customs regulations to navigate—thus, *Ackerman* is not controlling. The materiality requirement goes to the ability of the defendants to import these particular goods, not to extraneous information supplied to customs during the importing process.

We conclude that the United States failed to prove the materiality element required for a prosecution under the first part of § 542. We emphasize that the latter part of § 542 enumerates offenses which do not require proof of materiality. These defendants were not, however, indicted for these offenses, but for offenses that do require such proof. Therefore, we must and do reverse their convictions.

REVERSED.