**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 97-50260**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**MARTIN HUERTA-SALINAS,**

**Defendant-Appellant.**

**Appeal from the United States District Court**
**for the Western District of Texas**
**(DR-97-CR-91-ALL)**

January 30, 1998

Before POLITZ, Chief Judge, GARWOOD, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Martin Huerta-Salinas appeals his conviction for unlawfully entering the United States, in violation of 8 U.S.C. § 1325(a)(1), basing error on the denial of his motion to suppress oral statements given to a Border Patrol Agent, and on the admission of testimony regarding immigration records.  We **AFFIRM**.

I.

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

On 21 February 1997, United States Border Patrol Agent Ruben Mestas responded to a remote sensor, located about 20 miles from the Rio Grande River in a remote area frequently traversed by illegal aliens when entering this country.  Agent Mestas observed a group of men, including Huerta-Salinas, walking along a trail, wearing dirty clothes, and carrying water jugs and knapsacks.  He also overheard them speaking Spanish, including discussing their location and the direction in which they needed to continue.

Agent Mestas confronted the group, identified himself as an immigration official, and asked where they were from.  As a group, they answered "from Mexico".  Agent Mestas then asked where they had crossed, to which the group responded "through the river".  The Agent arrested the group, including Huerta-Salinas, and took them to the border patrol station for processing.

At the station, Agent Mestas questioned Huerta-Salinas about his name, age and nationality.  During this questioning, Huerta-Salinas produced a copy of a temporary resident alien card.  Agent Mestas continued to question him regarding how and where he entered the United States, to which Huerta-Salinas responded two or three times that he had crossed through the river and had not presented the card at a port of entry.  The Agent then informed Huerta-Salinas of his *Miranda* rights, which he invoked by refusing to make further statements.  *See* *Miranda v. Arizona*, 384 U.S. 436 (1966).

Agent Mestas forwarded his arrest report to Border Patrol Agent Paul Martinez, who conducted a Central Index System check on Huerta-Salinas. This showed that the temporary resident alien status had expired in 1990 (approximately seven years earlier), and that there had been no request for a change to permanent alien status.

In March 1997 a bench trial was conducted. Huerta-Salinas was found guilty and sentenced to six months imprisonment.

## II.

For a conviction under 8 U.S.C. § 1325(a)(1), the Government must prove an entry, or attempted entry, by an alien into the United States at any time or place other than as designated by immigration officers. Additionally, the Government must prove how the entry was effected. **United States v. Flores-Peraza**, 58 F.3d 164, 168 (5th Cir. 1995), *cert. denied,* 116 S. Ct. 782 (1996).

Huerta-Salinas contends the district court erred by refusing to suppress the statements given to Agent Mestas at the station, and by admitting the testimony concerning the INS records.

## A.

As for the suppression denial, we review the district court's findings of fact under the clearly erroneous standard; its conclusions of law, *de novo.* *E.g.,* **United States v. Cardenas**, 9 F.3d 1139, 1147 (5th Cir. 1993), *cert. denied,* 511 U.S. 1134 (1994). In doing so, we view the evidence in the light most

favorable to the prevailing party.  *Id.*  We will independently review the record when, as here, the court entered no factual findings or legal theory to support its denial.  ***United States v. Yeagin***, 927 F.2d 798, 800 (5th Cir. 1991).

Huerta-Salinas contends that the statements at the station should have been suppressed because he had not been given his *Miranda* warnings.  To this end, he maintains that the questions to which he responded were not within the routine booking exception to *Miranda*.

But, we begin our analysis at an earlier point in time — the statements Huerta-Salinas gave in the field when he first encountered Agent Mestas, which are nearly identical to those given later at the station.  Huerta-Salinas does not, and indeed cannot, contend that his *Miranda* rights were violated during that field encounter.  It is undisputed that Huerta-Salinas was not then in custody, thus there could be no *Miranda* violation.  *See, e.g.,* ***United States v. Pofahl***, 990 F.2d 1456, 1487 (5th Cir. 1993)("***Miranda*** requires that the warnings be given prior to custodial interrogation.").

In the field, when asked "where are you from", the group, including Huerta-Salinas, replied "Mexico".  And, when next asked where they had crossed, the group, again including Huerta-Salinas, replied "through the river".  Huerta-Salinas did not object at trial to the introduction of these statements.

- 4 -

We conclude that these statements (admitting being *from Mexico* and entry *through* the Rio Grande River); the use by Huerta-Salinas of the copy of his temporary resident alien card, as discussed *infra*; and the Agent's testimony regarding the area where Huerta-Salinas was found, what he was wearing, and what his group was overheard saying, were sufficient to establish, beyond a reasonable doubt, his entering the country in violation of § 1325(a)(1).

Accordingly, we need not decide whether the station-statements were in violation of **Miranda.** Even assuming they were, such error is harmless. "It is well settled that the admission of statements obtained in violation of **Miranda** may constitute harmless error." **United States v. Ackerman**, 704 F.2d 1344, 1349 (5th Cir. 1983); **Null v. Wainwright**, 508 F.2d 340, 343 (5th Cir.), *cert. denied,* 421 U.S. 970 (1975).

In making such an evaluation, we must

> "review the facts of the case and the evidence adduced at trial" to determine the effect of the unlawfully admitted evidence "upon the other evidence adduced at trial and upon the conduct of the defense." A court must then decide whether, absent the so-determined unconstitutional effect, the evidence remains not only sufficient to support the verdict but so overwhelming as to establish the guilt of the accused beyond a reasonable doubt.

*Ackerman*, 704 F.2d at 1349-50, (quoting *Harryman v. Estelle*, 616 F.2d 870, 876 (5th Cir.)(en banc), *cert. denied*, 449 U.S. 860 (1980)).

The station-statements are nearly identical to those in the field. Ignoring the station-statements, the other evidence against Huerta-Salinas was so overwhelming as to establish unlawful entry beyond a reasonable doubt.

B.

As noted, for § 1325(a)(1) purposes, the unlawful entry must be by an alien. As reflected by the evidence discussed in part II. A., such status was proved sufficiently. This notwithstanding, Huerta-Salinas contends that the district court erred in admitting testimony about information obtained from INS records, because it was not admissible under an exception to the hearsay rule.

Huerta-Salinas asserts that this information was used to prove that his legal resident status had expired at the time of his arrest. He contends also that it was improperly used to show the absence of information — that he had failed to request permanent resident alien status.

In the field, Huerta-Salinas' group stated they were from Mexico. And, at the station, in response to questioning about his name, age, and nationality, Huerta-Salinas produced a *copy* of his *temporary* resident alien card. (Agent Mestas did not testify as to an expiration date on the card.) The Agent reacted to this by

- 6 -

asking Huerta-Salinas where he had crossed and whether he had presented the card at a port of entry. Huerta-Salinas replied that he had crossed through the river and had not so presented the card. (As noted, admission of these statements was harmless error.) At that point Huerta-Salinas was given his **Miranda** warnings and refused to make any more statements.

Agent Martinez testified that he conducted a Central Index System check on Huerta-Salinas after receiving the arrest report; and that this revealed that Huerta-Salinas' temporary resident alien status had expired in 1990 (approximately seven years before his arrest), and that he had never sought permanent resident alien status. Huerta-Salinas objected, asserting that the testimony, *inter alia*, was hearsay.

We review evidentiary rulings only for abuse of discretion. *E.g.*, **United States v. Dickey**, 102 F.3d 157, 163 (5th Cir. 1996). Moreover, we are reviewing a bench trial. "[T]he prejudicial impact of erroneously admitted evidence in a bench trial is presumed to be substantially less than it might have been in a jury trial." **Cardenas**, 9 F.3d at 1156. "'[A] judge, sitting as a trier of fact, is presumed to have rested his verdict only on the admissible evidence before him and to have disregarded that which is inadmissible.'" **Id.** (quoting **Government of the Canal Zone v. Jimenez G.**, 580 F.2d 897, 898 (5th Cir.), *cert. denied*, 439 U.S.

990 (1978)); **United States v. Hughes**, 542 F.2d 246, 248-49 (5th Cir. 1976).

As discussed *supra*, "any error the judge makes in admitting evidence is thus harmless if there exists other admissible evidence sufficient to support the conviction." **Cardenas**, 9 F.3d at 1156; **United States v. Impson**, 562 F.2d 970, 971 (5th Cir. 1977), *cert. denied* 434 U.S. 1050 (1978). And, as reflected in part II. A., we need not decide whether the testimony concerning the INS records constitutes inadmissible hearsay. Even assuming error, it was harmless.

For example, at the station, apparently in an effort, at least in part, to prove that he was not an alien, Huerta-Salinas produced the copy of his temporary resident alien card. And, as discussed above, there was other admissible evidence along this line. As another example, in the field, Huerta-Salinas in effect admitted his alien status by his statement that he was *from Mexico*. *Cf.,* **United States v. Arriaga-Segura**, 743 F.2d 1434, 1435 (9th Cir. 1984). Again, in sum, even ignoring the testimony about the records-check, there was more than sufficient evidence to support the conviction.

III.

For the foregoing reasons, the judgment is

*AFFIRMED.*

- 8 -