USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 93-1529 UNITED STATES OF AMERICA, Appellee, v. STEPHEN A. HOLMQUIST, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Robert E. Keeton, U.S. District Judge] ___________________ _________________________ Before Selya and Boudin, Circuit Judges, ______________ and Carter,* District Judge. ______________ _________________________ John H. LaChance, with whom Milly Whatley and LaChance & _________________ ______________ __________ Whatley were on brief, for appellant. _______ Robert L. Ullman, Assistant United States Attorney, with _________________ whom Donald K. Stern, United States Attorney, was on brief, for _______________ the United States. _________________________ September 28, 1994 _________________________ ____________ *Of the District of Maine, sitting by designation. SELYA, Circuit Judge. Defendant-appellant Stephen A. SELYA, Circuit Judge. _____________ Holmquist appeals his convictions on six counts of importing firearms by means of false statements in violation of 18 U.S.C. 542 and three counts of exporting restricted firearms in violation of 22 U.S.C. 2778. Holmquist's case has a certain labyrinthine quality. Having successfully negotiated the maze, however, we find appellant's claims to be without legal merit and, therefore, affirm the judgment below. I. BACKGROUND I. BACKGROUND Appellant, a resident of Massachusetts, owned and operated ARMCO, a firm engaged in the retail sale of firearms. Apparently not content with the domestic market, and believing his entrepreneurial skills to be of sufficient caliber, appellant set his sights on the international scene. Between 1989 and 1991, he conducted several business transactions with individuals in the People's Republic of China. Since these transactions triggered the indictment in this case, we offer an overview of them. Where appropriate, we resolve evidentiary conflicts, and indulge reasonable inferences, in a manner compatible with the jury verdict. See, e.g., United States v. Maraj, 947 F.2d 520, ___ ____ _____________ _____ 522-23 (1st Cir. 1991). In May of 1989, the U.S. State Department granted appellant's request for a license to export handguns to the People's Republic of China. However, following the tragic events that rocked Tiananmen Square in June of that year, the State Department declared that most firearms no longer could be 2 exported to China. At the same time, the Department revoked or suspended all existing export licenses (including appellant's) and declared a moratorium on the issuance of new licenses. When appellant thereafter sought just such a license, the State Department sent back his application, unapproved and stamped "returned without action." Appellant did not reapply. Despite the lack of a license or other formal authorization, appellant thrice smuggled restricted firearms to China between October 1989 and July 1990. He carried the weaponry on commercial flights out of Boston, nestled in his suitcases amidst other, more orthodox travel items. After arriving in China, appellant delivered the guns to either Mr. Ha, a high-ranking government official,1 or Andrew Wong, a business executive. Based on the evidence anent these transactions, the jury convicted appellant on three counts of unlawful exportation. China also served appellant as a source for importing firearms and ammunition into the United States. These importations, though not in themselves unlawful, ultimately became so when accompanied by appellant's apocryphal statements concerning the value of his wares. On six different occasions during 1990 and 1991, appellant undervalued imports, presumably to reduce the duty due. The prosecution was able to adduce virtually irrefutable proof of this duplicity: dual sets of ____________________ 1Carrying the adversarial ethic to an extreme, the parties are unable to agree on the spelling of Mr. Ha's first name; the government spells it Solomon while appellant spells it Soloman. We attempt a Solomonic resolution of the appellative appellate contretemps, eschewing any textual reference to Ha's given name. 3 invoices, one containing the price disclosed to Customs and the other containing the actual, higher price that appellant in fact had paid. Based on this well-documented pattern of deceit, the jury convicted appellant on six counts of entering goods by means of false statements. II. THE IMPORT CHARGES II. THE IMPORT CHARGES Taking matters in reverse chronological order, we turn first to an examination of the import charges. These counts arise under a criminal statute that provides in pertinent part: Whoever enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise by __ means of any fraudulent or false invoice, _________ declaration, affidavit, letter, paper, or by __ means of any false statement, written or _________ verbal, or by means of any false or ______________ fraudulent practice or appliance, or makes any false statement in any declaration without reasonable cause to believe the truth of such statement, or procures the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement, whether or not the United States shall or may be deprived of any lawful duties . . . [s]hall be [punished as provided]. 18 U.S.C. 542 (emphasis supplied).2 Appellant does not deny that he knowingly made false statements to Customs officials, thereby undervaluing his imports. Nonetheless, he contends that such statements do not ____________________ 2Complementing this first provision is a second, covering deceptive importations that are designed to deprive the government of duties. Although the prosecution in this case may have missed the bull's-eye by charging appellant under the first, rather than the second, of section 542's provisions, the government is bound by its charging decision. Consequently, the proviso we have quoted governs here. 4 fall within the scope of the statute of conviction because the phrase "by means of" indicates that no violation occurs unless the merchandise, absent the false invoice, statement, or practice, would have been excludable. And he says this was not the case regarding the Chinese munitions, as their importation was lawful. The government, by contrast, puts no stock in a causation requirement, dismissing appellant's argument as involving too cramped a reading of the statutory language. Because the parties' dispute boils down to a pure question of statutory interpretation, our review is plenary. See United ___ ______ States v. Gifford, 17 F.3d 462, 471-72 (1st Cir. 1994); Liberty ______ _______ _______ Mut. Ins. Co. v. Commercial Union Ins. Co., 978 F.2d 750, 757 ______________ __________________________ (1st Cir. 1992). Whatever shadows cloud this record, one thing is very clear: even though no materiality requirement appears on the statute's face, section 542's first provision must be read to contain such a requirement; to justify a conviction, the prosecution must demonstrate that the false invoice, statement, or practice is related to the importation in some material respect. This is the construction recognized by virtually every court that has directly addressed the issue. See, e.g., United ___ ____ ______ States v. Corcuera-Valor, 910 F.2d 198, 199 (5th Cir. 1990); ______ ______________ United States v. Bagnall, 907 F.2d 432, 435 (3d Cir. 1990); ______________ _______ United States v. Teraoka, 669 F.2d 577, 579 (9th Cir. 1982). It _____________ _______ also comports with our construction of the parallel civil statute, 19 U.S.C. 1592, explicated in United States v. Ven- ______________ ____ 5 Fuel, Inc., 758 F.2d 741, 761-62 (1st Cir. 1985). We hasten to ___________ add that the inclusion of a materiality component is warranted by more than habit; such a requirement is pragmatically desirable because it permits courts to advance the statute's apparent purposes and, if necessary, to exclude trivial lapses from the statute's ambit. Cf., e.g., United States v. Corsino, 812 F.2d ___ ____ _____________ _______ 26, 30 (1st Cir. 1987) (explaining materiality requirement under 18 U.S.C. 1001, which prohibits, among other things, the submission of false statements in matters within the jurisdiction of any federal agency). Yet, our recognition of a materiality requirement does not solve the interpretive riddle that this appeal presents; it is the nature of the materiality requirement not its mere existence over which the parties grapple. Appellant invites us to hold that materiality in this context is contingent on a crabbed construction of the term "by means of." Specifically, he argues that "by means of" is synonymous with "because of," and that a false statement is material under the first part of section 542 only if the importation of any particular item would have been forbidden in its absence. We decline the invitation. In discerning the meaning of this portion of section 542, "[w]e start as all statutory construction must start by looking at the language of the law," United States v. Charles ______________ _______ George Trucking Co., 823 F.2d 685, 688 (1st Cir. 1987), and by ___________________ examining the "ordinary, contemporary, common meaning" of the words, Perrin v. United States, 444 U.S. 37, 42 (1979). Bearing ______ _____________ 6 this in mind, we are constrained to conclude that the phrase "by means of" is not synonymous with "because of"; while the former includes the latter, that hardly renders them coterminous. Rather, understood in an unforced way, saying that someone has effected an importation by means of a false statement is simply to suggest that the person has introduced a false statement at some significant stage in the process. The phrase does not mean that the person could not have used a true statement in tandem with the false statement, or that the importation could not otherwise have been achieved. See, e.g., Webster's New Universal ___ ____ _______________________ Unabridged Dictionary 1115 (2d ed. 1983) (defining "by means of" _____________________ as "by using; with the aid of; through"); Richard A. Spears, American Idioms Dictionary 43 (1987) (defining "by means of ____________________________ something" as "using something" or "with the use of something"). There is no basis for rejecting plain meaning here. Indeed, contrary to appellant's importuning, the principal problem with the "by means of" language is not ambiguity its meaning is obvious but, rather, the language's potential breadth. It is because of this problem that courts have read a materiality requirement into this portion of section 542. This requirement is intended to flesh out, not to eviscerate, the "by means of" language as that phrase resonates in the context of section 542. So viewed, it brings to the textual surface the commonsense notion that, to ground a conviction, there must be a significant nexus between the false statement and the importation. 7 We hold, therefore, in basic agreement with the Third Circuit, that a false statement is material under section 542 if it has the potential significantly to affect the integrity or operation of the importation process as a whole, and that neither actual causation nor actual harm to the government need be demonstrated. See Bagnall, 907 F.2d at 436 ("The language of ___ _______ 542 suggests to us that its purpose is no less than to preserve the integrity of the process by which foreign goods are imported into the United States. As a result, we are inclined to believe that a false statement is material not only if it is calculated to effect the impermissible introduction of ineligible or restricted goods, but also if it affects or facilitates the importation process in any other way."); see also Corsino, 812 ___ ____ _______ F.2d at 30-31 (drawing similar conclusion in relation to the judicially devised materiality requirement of 18 U.S.C. 1001); United States v. Greenberg, 735 F.2d 29, 31 (2d Cir. 1984) ______________ _________ (suggesting, in construing an analogous statute, that when "a false statement is made to a public body or its representative, materiality refers to the impact that the statement may reasonably have on the ability of that agency to perform the functions assigned to it by law"). It is thus apparent that the focus of an inquiry into materiality is not what effect a false statement actually may have, but whether it carries a serious potential risk for obstructing the agency or substantially inhibiting the agency's performance of its duties under the law. Transplanted to the 8 Customs milieu, a statement is material if it has the potential significantly to affect the integrity or operation of the importation process the manner in which Customs handles the assessment of duties and passage of goods into the United States. Having distilled the plain meaning of the disputed phrase, we could end our inquiry at this point. See, e.g., ___ ____ Charles George Trucking, 823 F.2d at 688 (explaining that, when _______________________ the language of a statute "points unerringly in a single direction, and produces an entirely plausible result, it is unnecessary and improper to look for other signposts"). But, here, to reinforce our conclusion that "material" means something more than "causal," we think it is appropriate to note that this conclusion is supported not only by the plain language of section 542, but also in three other ways: by the better reasoned case law, by the adverse textual consequences that would result from adopting appellant's proposed definition, and by the policy underlying the statutory provision. See, e.g., United States v. ___ ____ _____________ O'Neil, 11 F.3d 292, 295-301 (1st Cir. 1993) (beginning ______ interpretive analysis with plain language of statute and verifying construction by reference to statutory structure, logic, and public policy). An examination of precedent reveals that we already have rejected a narrow, causally oriented reading of the materiality requirement found in the civil analog to section 542. See Ven-Fuel, 758 F.2d at 762 (branding such a construction of 19 ___ ________ U.S.C. 1592 "entirely baseless" and predicting that "[s]uch a 9 restrictive reading would largely eviscerate the statute, rendering it meaningless in the vast majority of cases").3 Our view of section 542's materiality requirement is also consonant with the reasoning and/or resolution of several cases from other jurisdictions. See, e.g., Bagnall, 907 F.2d at 436; United ___ ____ _______ ______ States v. Brown, 456 F.2d 293, 295 (2d Cir.), cert. denied, 407 ______ _____ _____ ______ U.S. 910 (1972); United States v. Szwaczka, 769 F. Supp. 293, 296 _____________ ________ (E.D. Wis. 1991); see also United States v. Yip, 930 F.2d 142, ___ ____ ______________ ___ 147-49 (2d Cir.) (construing the second provision of section 542 in an equally broad manner), cert. denied, 112 S. Ct. 197 _____ ______ (1991).4 A broad construction of section 542 is also supported by accepted canons of statutory construction. If the first provision in section 542 is construed as applying only to ineligible imports, then the final sentence of the section, discussing the legal irrelevance of depriving the government "of any lawful duties," would be meaningless (for nonimportable items are not dutiable, and hence, the government could never be deprived). Accordingly, such a construction would transgress the ____________________ 3Indeed, although the precise issue was not before us, we commented favorably upon our perception that "under 18 U.S.C. 542, criminal convictions have regularly been sustained where generically importable goods had been entered by trick or artifice." Ven-Fuel, 758 F.2d at 762 (citing United States v. ________ _____________ Murray, 621 F.2d 1163 (1st Cir.), cert. denied, 449 U.S. 837 ______ _____ ______ (1980); United States v. Brown, 456 F.2d 293 (2d Cir.), cert. _____________ _____ _____ denied, 407 U.S. 910 (1972)). ______ 4To be sure, two courts of appeals, the Fifth and the Ninth, have reached the opposite conclusion. See Corcuera-Valor, 910 ___ ______________ F.2d at 199-200; Teraoka, 669 F.2d at 579. With respect, we find _______ these opinions unpersuasive and we decline to follow them. 10 oft-stated interpretive rule that "[a]ll words and provisions of statutes are intended to have meaning and are to be given effect, and no construction should be adopted which would render statutory words or phrases meaningless, redundant or superfluous." Ven-Fuel, 758 F.2d at 751-52; accord O'Neil, 11 ________ ______ ______ F.3d at 297. Finally, a statute must be read as a whole, with due regard for its object, purposes, and underlying policy. See ___ Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 51 (1987). Here, a ___________________ _______ broad reading of the disputed language serves to advance the fundamental purpose of the first part of section 542. That purpose, as evidenced by Congress's choice of phrase particularly the caveat that the government need not "be deprived of any lawful duties" is to ensure full disclosure in importation and thereby maintain the integrity of the importation process as a whole. See Bagnall, 907 F.2d at 436. Adopting an ___ _______ isthmian standard would thwart this goal by making it more attractive for importers to assume the persona of Holmes's "bad man" and to practice strategic forms of deception under the guise of immateriality. See Oliver Wendell Holmes, Jr., The Path of ___ ___________ the Law, 10 Harv. L. Rev. 457, 459 (1897) ("If you want to know _______ the law and nothing else, you must look at it as a bad man, who cares only for the material consequences which such knowledge enables him to predict . . . ."). To recapitulate, we hold that materiality is, in fact, an element of the offense of conviction. This element serves to 11 explain, not to emasculate, the "by means of" language contained in the first part of the statute. Particularly when viewed against this backdrop, appellant's proposed equation of "by means of" with "because of" betrays both common meaning and common sense. By limiting the scope of section 542's first provision to ineligible items, such an interpretation would effectively convert the provision into an inoperative piece of parchment. Accordingly, we reject appellant's narrow construction, and rule that, in this context, "material" means having the potential significantly to affect the integrity or operation of the importation process as a whole, without regard to whether the conduct at issue caused the importation and without regard to whether the federal government suffered actual harm. Appellant's false statements had this deleterious potential. Undervaluations are by their nature materially related to the importation process, both because they may interfere with the government's efforts to monitor and regulate the flow of goods into the United States and because they undermine the integrity of the entire importation process. Consequently, appellant's convictions under section 542 must be upheld.5 III. THE EXCLUDED EVIDENCE III. THE EXCLUDED EVIDENCE We turn now to appellant's assertion that his ____________________ 5Appellant also assigns error to the district court's jury instructions on the importation counts. This assignment of error is constructed around the same misinterpretation of section 542's materiality requirement. It, therefore, fails. 12 convictions under the Arms Export Control Act, 22 U.S.C. 2778, are tainted because the trial court excluded evidence evidence that we sometimes shall call "contacts evidence" that would have established a defense of apparent public authority6 and/or negated the element of specific intent. For the reasons explained below, we find this assertion unavailing. A. Proceedings Below. A. Proceedings Below. _________________ Because the precise course of proceedings before and during the trial is critical to the resolution of appellant's challenge, we rehearse the pertinent details. Between April 27 and May 6, 1992, appellant served subpoenas duces tecum on three _____ _____ persons an agent of the Naval Intelligence Service, the keeper of records at the National Security Agency, and a business associate (whom we shall call "John Doe") who had accompanied appellant on his excursions to China proposing to ensure their availability as witnesses at his trial. Appellant alleged that Doe (who, he said, was in the employ of a federal intelligence agency) had authorized the arms exports.7 It was appellant's ____________________ 6The "defense" of apparent public authority is a defense based on a mistaken but good-faith belief that one's conduct is authorized by the government. Appellant's repeated references to this defense constitute little more than a school of red herrings. The defense is not a defense at all. See United ___ ______ States v. Duggan, 743 F.2d 59, 83-84 (2d Cir. 1984) (rejecting ______ ______ such a defense in a prosecution under 22 U.S.C. 2778); United ______ States v. Anderson, 872 F.2d 1508, 1513-16 (11th Cir.) (similar), ______ ________ cert. denied, 493 U.S. 1004 (1989). _____ ______ 7The nonexistent defense of apparent public authority, see ___ supra note 6, must not be confused with the potentially viable _____ defense of actual public authority, which may come into play when a defendant undertakes certain acts, reasonably relying on the statements of a government agent cloaked with actual authority. 13 legal theory that, even if Doe were not a spy, Doe's imprimatur could undermine the government's case against appellant either by providing a defense of apparent public authority, but see supra ___ ___ _____ note 6, or by negating an element of the offense, namely, specific intent. The government responded by filing motions to quash the subpoenas, followed on May 18 by both a memorandum of authorities and an ex parte submission pursuant to the Classified Information __ _____ Procedures Act, 18 U.S.C. app. III (CIPA), which limns a procedure permitting classified information "to be inspected by the court alone." Id. 4. On the same date, appellant made an ___ oral ex parte proffer to the trial court, explaining the __ _____ relationship between the subpoenas and his proposed trial strategy. On May 21, following an in camera hearing, Judge Keeton __ ______ granted the government's motions to quash. He also granted the government's oral motion in limine, made in anticipation that __ ______ appellant might renew his efforts to proffer contacts evidence. When reduced to writing on May 26, 1992, the in limine order __ ______ required appellant, before "fil[ing] or disclos[ing] any document, ask[ing] any question, or mak[ing] any statement related to any alleged contact between any individual and any intelligence agency," to "first present[] such matter directly to ____________________ See United States v. Baptista-Rodriguez, 17 F.3d 1354, 1368 n.18 ___ _____________ __________________ (11th Cir. 1994). Here, however, we have painstakingly checked the materials tendered in camera and find no colorable or __ ______ cognizable basis for a defense of actual public authority. 14 the [trial judge] in chambers or at sidebar and . . . receive[] from [the judge] a ruling allowing the requested action . . . ." Immediately prior to trial, appellant filed a motion to reconsider these rulings, accompanied by a written, sworn ex __ parte proffer. After a hearing that began on October 22, 1992, _____ and continued into the next day, the district court denied the motion. Trial commenced a few days later. At trial, appellant called only one witness, a Customs agent, and made no discernible effort to capitalize on the court's invitation to examine his purported contacts evidence in __ camera.8 Still, at the close of his case appellant moved for a ______ mistrial, claiming that the district court's pretrial rulings denied him the opportunity to present a robust defense. The court spurned the motion. In due course the jury convicted appellant on all three exportation counts (as well as on the charges of unlawful importation discussed in Part II, supra). _____ B. Analysis. B. Analysis. ________ Appellant contests the district court's pretrial rulings specifically, the orders entered in respect to the government's motions to quash and motion in limine on the __ ______ theory that those rulings precluded him from presenting to the jury a complete and competent defense. He assails the district court's denial of his motion for a mistrial for much the same ____________________ 8Even if we give appellant the benefit of his description of it, the contacts evidence is entropic at best. Apart from the claims about what Doe ostensibly said, the contacts evidence consists entirely of gauzy generalities, inadmissible double hearsay, and unsupported suppositions. 15 reason. In particular, he alleges that these rulings which for our purposes coalesce into, and are subsumed by, the order in __ limine9 transgressed his rights under both the Due Process ______ Clause of the Fifth Amendment and the Compulsory Process Clause of the Sixth Amendment by foreclosing him from mounting a defense to the charges. Having carefully deterrated the record, we find that this challenge has not been properly perfected and, therefore, evaporates into thin air. On appeal, Holmquist claims that the contacts evidence bore on two possible lines of defense: (1) that he acted on Doe's instructions, and, hence, under the guise of apparent public authority a defense that, in any event, would have misfired, see supra note 6; and (2) that he lacked the requisite ___ _____ specific intent to commit the charged crime a strategy that, at least in theory, had promise, see, e.g., United States v. Murphy, ___ ____ _____________ ______ 852 F.2d 1, 7 (1st Cir. 1988) (explaining that, in respect to charges under 22 U.S.C. 2778, the prosecution must prove that the defendant in fact "knew he had a legal duty not to export the weapons"), cert. denied, 489 U.S. 1022 (1989); see also United _____ ______ ___ ____ ______ States v. Anderson, 872 F.2d 1508, 1517 (11th Cir.) (rejecting ______ ________ ____________________ 9Because appellant's subpoenas sought the production of evidence at trial, the district court's order in limine __ _____ __ ______ effectively controlled, and therefore subsumed, the quashal order. By like token, the district court's denials of appellant's eve-of-trial motion for reconsideration and mid-trial motion for a mistrial lack independent significance; if the court committed no antecedent error in the exclusion of evidence under the aegis of the order in limine, then those motions were __ ______ bootless. Thus, our analysis of this assignment of error may appropriately focus upon the order in limine alone. __ ______ 16 apparent public authority defense, but acknowledging that defendant's mistaken belief that his acts were authorized might negate specific intent), cert. denied, 493 U.S. 1004 (1989).10 _____ ______ There is some disagreement over the extent to which appellant explicitly and clearly pursued the second of these two legal theories during the course of the litigation. The best that can be said is that passing reference to both theories is made in appellant's opposition to the government's motion to quash; and appellant's motion to reconsider and motion for mistrial each purported to incorporate the contents of this initial opposition. But at the pretrial hearings of May 18 and 21, 1992, which were specifically devoted to assessing the propriety of the government's motions to quash and motion in limine, appellant did __ ______ not once bring the specific intent theory to the judge's attention. Similarly, appellant made no explicit reference to the theory when arguing his motion to reconsider. Based on the overall record, appellant might well be deemed to have abandoned the specific intent theory. As we have previously admonished, "[a] party has a duty to put its best foot forward . . . [and] to spell out its arguments squarely and distinctly." Paterson-Leitch Co. v. Massachusetts Mun. Wholesale ___________________ ____________________________ Elec. Co., 840 F.2d 985, 990 (1st Cir. 1988); see also United _________ ___ ____ ______ ____________________ 10There is also some suggestion that appellant considered raising a defense of estoppel by entrapment. See United States ___ _____________ v. Smith, 940 F.2d 710, 714 (1st Cir. 1991) (discussing _____ doctrine). On appeal, however, Holmquist offers no developed argumentation in connection with this defense. Consequently, we deem it waived. See United States v. Zannino, 895 F.2d 1, 17 ___ _____________ _______ (1st Cir.) cert. denied, 494 U.S. 1082 (1990). _____ ______ 17 States v. Boylan, 898 F.2d 230, 249 (1st Cir.) ("Litigants cannot ______ ______ expect a judge . . . to be clairvoyant."), cert. denied, 498 U.S. _____ ______ 849 (1990). Although the question of abandonment is close, we need not resolve it, for at the trial itself, appellant eschewed any attempt to offer evidence in camera in accordance with the __ ______ district court's express invitation and the provisional nature of the court's in limine ruling.11 The government maintains that, __ ______ given this omission, appellant no longer can contest the operation of the court's order in limine. We agree. Appellant's __ ______ snubbing of the court's invitation to consider evidentiary offerings during the trial effectively insulated from appellate review any complaints he voiced in connection with the court's pretrial evidentiary rulings. In the pages that follow, we explain our rationale. It is a bedrock principle of our adjudicatory system that ostensible errors arising before and during trial must be properly raised and preserved in order to be reviewable on appeal. See United States v. Griffin, 818 F.2d 97, 104-06 (1st ___ _____________ _______ Cir.), cert. denied, 484 U.S. 844 (1987). In terms of _____ ______ evidentiary limitations, this principle is so important that we find it partially codified in the third of our Federal Rules of ____________________ 11The transcript reflects only one point in the trial at which appellant requested a sidebar for the purpose of attempting to introduce evidence related to the order in limine and on __ ______ that lone occasion, the district court granted appellant's request. This demonstrates quite vividly an awareness on appellant's part that the court had left the door open to proffers of such evidence. 18 Evidence. "Error may not be predicated upon a ruling . . . excluding evidence [unless] the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." Fed. R. Evid. 103(a). In entering the in limine order below, Judge Keeton __ ______ made it clear that the only definite limitation on appellant's ability to introduce contacts evidence was that he must first present it out of the jurors' earshot, that is, to the judge, either in chambers or at sidebar. Federal district judges enjoy broad discretion in respect to the ordering and presentation of proof and the handling of evidentiary questions. See, e.g., Fed. ___ ____ R. Evid. 104(c) (stating that hearings on preliminary matters other than the admissibility of confessions may be conducted out of the hearing of the jury "when the interests of justice require"); Fed. R. Evid. 611(a) (empowering district courts to exercise "reasonable control" over mode and presentation of evidence); see also Luce v. United States, 469 U.S. 38, 41 n.4 ___ ____ ____ _____________ (1984) (approving use of in limine rulings as an adjunct of "the __ ______ district court's inherent authority to manage the course of trials"); Douglas L. Colbert, The Motion in Limine in Politically ___________________________________ Sensitive Cases: Silencing the Defendant at Trial, 39 Stan. L. ___________________________________________________ Rev. 1271 (1987) (discussing, though bemoaning, the increased use of motions in limine to preclude defendants from raising certain __ ______ defenses altogether). In light of this discretion, we are unable to conclude that the in limine order itself lay beyond the __ ______ district court's proper purview, or that it was untenable in any 19 particular. It follows inexorably that, since the in limine order __ ______ represented a lawful exercise of judicial power, appellant's failure to abide by its terms bars him from complaining in this venue about evidence that could have been but was not proffered to the court within the framework of the order. After all, the trial judge's offer to consider proposed evidentiary offerings in camera, as the occasion arose, was not a mere __ ______ formality and appellant treated it as such at his peril. See ___ Conway v. Electro Switch Corp., 825 F.2d 593, 596 n.1 (1st Cir. ______ ____________________ 1987) ("Under the best of circumstances, counsel must exercise caution in relying exclusively upon rulings made in connection with pretrial motions in limine as the basis for preserving __ ______ claims of error in the admission and exclusion of evidence."); Freeman v. Package Mach. Co., 865 F.2d 1331, 1337 (1st Cir. 1988) _______ _________________ (offering similar admonition). In short, appellant's decision to ignore the procedural device fashioned by the trial court disabled him from mounting a subsequent challenge to what he now dysphemistically calls the "exclusion" of evidence. Our conclusion rests not only upon the fundamental principles of judicial economy and attorney cognizance, but also upon a well-defined corpus of federal appellate case law. The touchstone, of course, is the Court's decision in Luce. The Luce ____ ____ Court held specifically that a defendant who chooses not to testify at trial loses his right to appeal the district court's ruling denying his in limine motion to forbid the impeachment use __ ______ 20 of a prior conviction. See Luce, 469 U.S. at 43. More ___ ____ generally, Luce teaches that there are concrete limits to a ____ party's right to request appellate review of evidentiary rulings, and that these limits reflect two factors: (1) the legitimate needs of appellate courts in the review of alleged evidentiary errors stemming from trials, see id. at 41-42 (observing that ___ ___ "[a] reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context"); and (2) the possibility that a defendant might exploit adverse rulings by treating them essentially as legal jokers, to be pulled from his sleeve should a conviction ensue, see id. at 42 (warning against ___ ___ setting the stage for a litigant, at no risk, to seed the record with error). In the instant case, both of these concerns are implicated. Regarding the reviewability concern, it is precisely because appellant comes before us not having attempted to offer evidence during the trial that we cannot rule intelligently on the underlying evidentiary questions; he presents us with an abstract intellectual exercise, rife with conjecture, rather than affording us an opportunity to inspect concrete evidence, offered and excluded in an actual trial context. Regarding the exploitation concern, we likewise have no reliable way of knowing whether appellant's decision to forgo the trial judge's invitation reflected a genuine sense of preclusion, a mere oversight, an ill-fated stratagem (such as an attempt to infect the trial with error), or simply a realization that the putative 21 contacts evidence was not likely to be helpful after all. Our conclusion that appellant did not sufficiently perfect a right to appeal in respect to contacts evidence draws further support from the myriad cases that have seen fit to extend the tenets of Luce into other contexts involving in limine ____ __ ______ motions. See Griffin, 818 F.2d at 105 (citing wide range of ___ _______ federal appellate cases extending principles articulated in Luce). Griffin itself is a good example. In that case, we ____ _______ declined to review a conditional pretrial ruling under Fed. R. Evid. 403, which prohibited a government witness from testifying that a certain associate of the defendant had once threatened him for cooperating with the government a threat which, according to the witness, caused him to withhold information from the government for over a year. The one condition on this pretrial order, however, was that the prohibition would vanish if the defense attempted to impeach the witness by referring to cooperation. The defendant abided by the ruling, but then challenged it following his conviction. In holding that he could not test the evidentiary question on appeal, we observed: "Although the court telegraphed what its ruling was likely to be if defense counsel opened the door, the latter never knocked. And, we will not venture to pass upon issues such as this in a vacuum." Id. at 103. Based on this, and on related concerns, ___ including the "danger of encouraging a defendant, as a trial tactic, to plant reversible error," id. at 104, we ruled that "to ___ raise and preserve for review the claim of [evidentiary error], a 22 party must obtain the order admitting or excluding the controversial evidence in the actual setting of the trial," id. ____________________________________ ___ at 105 (emphasis supplied). While there are factual differences between Griffin and the case at hand, Griffin's logic points _______ _______ unerringly toward the conclusion that appellant in this case never perfected his right to appeal the putative exclusion of contacts evidence. Two years after Griffin, we had another opportunity to _______ apply the principles of Luce, this time to a case involving an ____ anticipatory motion to limit cross-examination of the defendant. See United States v. Nivica, 887 F.2d 1110, 1115 (1st Cir. 1989), ___ _____________ ______ cert. denied, 494 U.S. 1005 (1990). After the district court _____ ______ refused to grant the motion, the defendant chose not to testify. The jury found him guilty. He then appealed the court's denial of his liminary motion. We gave him short shrift. Beginning with the premise that "the concerns which undergird Luce and ____ Griffin control here," id. at 1116, we determined that: _______ ___ Because Nivica did not take the stand, or ask for voir dire, his exact testimony remains, in the Luce phrase, "unknowable." The ____ alleged harm is "wholly speculative," both because (a) the judge, in the give-and-take of live testimony, might have changed his mind and confined cross-examination more closely, and (b) on this record, we have no way of knowing the extent to which the government would have sought to cross- question Nivica (if at all) about other matters. Moreover, in this case as in Luce, ____ there is no reliable method for divining the genesis of defendant's decision not to testify. . . . Furthermore, were we to relax the rule, we would run the very risk ease in "`plant[ing]' reversible error" that the Luce Court aimed to avoid. Finally, ____ 23 defendant's tactical choice in this case, as in Luce, has thwarted our ability to judge ____ the harmfulness of the asserted error. Id. at 1116-17 (citations omitted). In the bargain, we rejected ___ defendant's claim that, because the trial judge ruled as a matter of law rather than expressly labelling his ruling as conditional, Luce should not have governed the analysis. We emphasized that ____ the critical dimensions of a Luce scenario include timing and ____ context, and that, "[u]ltimately, the trier's decision, whatever his initial inclination, had to depend upon particular questions and their relation to the content of the direct examination." Id. at 1117. In the same way, appellant in the case before us ___ inexplicably declined the opportunity to probe the trial judge's provisional ruling by making a concrete proffer in a live context, thus depriving this court of the opportunity meaningfully to review his claim. Cf. Reilly v. United States, ___ ______ _____________ 863 F.2d 149, 168 (1st Cir. 1988) (holding, in respect to a discovery request, that "by ignoring the [judge's] clear invitation to specify, face-up and squarely, what information it continued to seek, appellant waived the right to protest the denial of its [discovery motion]"). We also find instructive the experience of the Seventh Circuit, which recently confronted a situation quite similar to this one. In United States v. Addo, 989 F.2d 238 (7th Cir. ______________ ____ 1993), the district court, over defendant's opposition, provisionally granted the government's motion in limine barring __ ______ the defendant from pursuing a particular line of argument at 24 trial. In so doing, the court made it clear that it would "allow the defense counsel . . . [to] renew her opposition to the government's motion before the conclusion of the trial." Id. at ___ 241. Defense counsel did not take advantage of this offer. On appeal, defendant challenged the district court's grant of the motion in limine. The Seventh Circuit began with the premise __ ______ that a party "may not lull the judge into thinking that [a theory] has been abandoned and then, after he has lost, pull a rabbit out of his pocket in the form of the forgotten motion." Id. (quoting United States v. Taglia, 922 F.2d 413, 416 (7th ___ ______________ ______ Cir.), cert. denied, 500 U.S. 927 (1991)). The court then _____ ______ concluded that the defense had failed to perfect its right to contest the exclusion of the desired line of argument: [T]he ball was in the defendant's court to challenge the granting of the motion in __ limine. For some reason, the defense failed ______ to respond to the judge's ruling again during the trial. This may have been an oversight on the part of defense counsel in the midst of a busy trial or a well-calculated trial strategy. Whatever the reason, the record reflects that the defense was clearly given the opportunity to raise the matter again before the trial judge and failed to do so. Accordingly, the defense may not challenge the merits of this ruling on appeal. Id. at 242; see also Favala v. Cumberland Engin'g Co., 17 F.3d ___ ___ ____ ______ ______________________ 987, 991 (7th Cir. 1994) (explaining that a "court's invitation to renew [an] issue" should be treated "as an indication that the court's ruling on the motion in limine is not final and is open to reconsideration; consequently, the failure to follow up on the invitation constitutes a waiver"); United States v. Hoyos, 3 F.3d _____________ _____ 25 232, 236 (7th Cir. 1993) (applying Addo to a situation in which ____ the trial court granted the government's motion in limine, __ ______ subject to reconsideration, and defendant neglected to raise the relevant issue during trial); United States v. Romano, 849 F.2d ______________ ______ 812, 815-16 (3d Cir. 1988) (declining to reverse defendant's conviction "based on mere speculation as to what the district court would have done" if defendant had proffered evidence at trial in an effort to surmount the district court's in limine __ ______ ruling); cf. United States v. Bonneau, 970 F.2d 929, 932-33 (1st ___ _____________ _______ Cir. 1992) (declining to review exclusion of testimony, alleged by defendant to establish lack of willfulness under 26 U.S.C. 7201, because defendant made no offer of proof in the trial court to establish the testimony's substance). These principles and precedents necessarily control our decision in this case. The district judge's ruling was patently provisional. The court gave appellant ample opportunity to reiterate his request to introduce evidence of purported government contacts in the context of the actual trial. For whatever reason, appellant chose not to take up the gauntlet. One consequence of appellant's inertia is that we, as an appellate tribunal, can only engage in rank speculation about whether the trial judge would have allowed appellant to introduce specific evidence (the exact nature of which is unknown to us, see supra note 8) for a specific purpose (the exact nature of ___ _____ which is likewise unknown to us) had he attempted to do so during the trial. An appeal that asks a reviewing court to decide 26 delicate questions of evidentiary error based not on a tangible, well-defined record, but rather on conjecture and surmise, does not deserve a favorable answer. For these reasons, we conclude that, when a judge issues a provisional in limine pretrial order and clearly invites __ ______ the adversely affected party to offer evidence at sidebar for the purpose of reassessing the scope or effect of the order in the setting of the actual trial, the exclusion of evidence pursuant to that order may be challenged on appeal only if the party unsuccessfully attempts to offer such evidence in accordance with the terms specified in the order.12 Because appellant failed to follow this well-marked path, we hold that he cannot now complain about the trial court's handling of the contacts ____________________ 12This rule is not without limits. For example, it will not apply when the in limine order is itself final. Finality may __ ______ inhere either in the nature of the judge's words, or in the rationale of his ruling, or in both. See, e.g., Fusco v. General ___ ____ _____ _______ Motors Corp., 11 F.3d 259, 262-63 (1st Cir. 1993) ("Where a court ____________ rules in limine that certain evidence is excluded but the ruling __ ______ is merely tentative or qualified, then the proponent might well have to offer the evidence at trial in order to preserve an appeal on the issue. But where the pretrial proffer is adequate and evidence is excluded unconditionally by a pretrial order, then we think that the proponent has preserved the issue for appeal and (other circumstances being unchanged) need not . . . proffer the evidence again at trial.") (citation omitted); Addo, ____ 989 F.2d at 242 (distinguishing situations in which the trial court stated that subsequent attempts to modify an in limine __ ______ ruling would be useless or futile); see also Favala, 17 F.3d at ___ ____ ______ 991 (noting rule that "the failure to follow up on the invitation [to reconsider a motion in limine] constitutes a waiver" but __ ______ finding no waiver in the particular case because the court "clearly indicated" that its ruling was definitive); cf. United ___ ______ States v. Mejia-Alarcon, 995 F.2d 982, 986 (10th Cir.) ______ _____________ (formulating three-part test to determine when the denial of a pretrial motion in limine to exclude evidence, in the absence of __ ______ a further objection at trial, will nonetheless preserve a right of appellate review), cert. denied, 114 S. Ct. 334 (1993). _____ ______ 27 evidence. IV. OTHER EVIDENTIARY ISSUES IV. OTHER EVIDENTIARY ISSUES In his final assignment of error, appellant suggests that the district court erred in permitting the prosecution to introduce, over objection, certain items of evidence that, appellant says, were not satisfactorily authenticated. The challenged evidence comprises a photocopy provided by Andrew Wong (a purchaser of unlawfully exported firearms), and snapshots of weapons displaying serial numbers matching for the most part those listed on weapons in appellant's inventory. In addition to questioning authentication, appellant also claims that, in all events, the photocopy should have been excluded as hearsay. We believe that this fusillade misses the mark. A. The Photocopy. A. The Photocopy. _____________ In respect to the photocopy, we treat appellant's authentication and hearsay challenges separately. 1. Authentication. Exhibit 17A purported to be a 1. Authentication. ______________ photocopy of a bank check in the amount of $2500, drawn on the Bank of China at Hong Kong, bearing a date of December 20, 1988, and made payable to appellant. To authenticate the proffer, Dennis Kelly, a Customs agent, testified that Wong provided him, via air courier from Hong Kong, with both the photocopy and a three-page invoice in appellant's handwriting. This document, admitted into evidence at trial as Exhibit 17, described, among 28 other things, a $2500 credit in Wong's favor.13 Appellant argues that the proof failed to eliminate a googol of possibilities concerning the photocopy, e.g., that it ____ was a fake, or that the check was made at some time other than the stated date, or that it was never delivered to appellant, or, if delivered, that it was never negotiated. Additionally, appellant argues that a finding of authenticity could not readily be based on material emanating from Wong because Wong had soured on him and was, therefore, a biased source. It cannot be gainsaid that documentary evidence must be authentic. The test of authenticity is straightforward: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a); see also United States ___ ____ _____________ v. Paulino, 13 F.3d 20, 23 (1st Cir. 1994); United States v. _______ ______________ Arboleda, 929 F.2d 858, 869 (1st Cir. 1991). ________ There is no single way to authenticate evidence. In particular, the direct testimony of a custodian or a percipient witness is not a sine qua non to the authentication of a writing. ____ ___ ___ See Paulino, 13 F.3d at 23. Thus, a document's "[a]ppearance, ___ _______ contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances," can, in cumulation, even without direct testimony, provide sufficient ____________________ 13On appeal, Holmquist does not contest the admission of Exhibit 17 as a full exhibit. 29 indicia of reliability to permit a finding that it is authentic. Fed. R. Evid. 901(b)(4); see also Paulino, 13 F.3d at 23; United ___ ____ _______ ______ States v. Newton, 891 F.2d 944, 947 (1st Cir. 1989). ______ ______ Issues of authentication are almost always fact- sensitive. Consequently, when such issues arise, the trial court must act as a gatekeeper. See United States v. Ladd, 885 F.2d ___ _____________ ____ 954, 956 (1st Cir. 1989); see generally Fed. R. Evid. 104(a). ___ _________ "If the court discerns enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be, then Rule 901(a) is satisfied and the weight to be given to the evidence is left to the jury." Paulino, 13 F.3d _______ at 23. And since rulings of this nature often depend on the trial judge's intimate knowledge of the case and the protagonists, we review rulings accepting or rejecting claims of authenticity only for mistake of law or abuse of discretion. See ___ Paulino, 13 F.3d at 23; United States v. McMahon, 938 F.2d 1501, _______ ______________ _______ 1508 (1st Cir. 1991). Here, the district court noted that the purported bank check was dated "Dec. 20, 1988"; that it was payable to "Steve Holmquist"; and that it was for $2500. The court also determined that Exhibit 17 (the three-page invoice in appellant's handwriting) strongly corroborated Exhibit 17A; after all, agent Kelly received the invoice in the very same package as the photocopy of the check, and the invoice mentioned a $2500 credit to Wong, thereby lending considerable credence to the proposition that Holmquist received a payment (the bank check), acknowledged 30 its receipt, and credited Wong's account in the amount of the payment.14 Given the totality of the circumstances, especially the ties binding Wong to Holmquist, we agree with the lower court that a jury could draw reasonable inferences connecting the photocopy of the bank check to the invoice. To be sure, appellant's objections are not entirely without force. It is possible that the photocopy had been ________ doctored, or constituted an instrument through which Wong, for whatever reason, aspired to carry out an elaborately staged hoax. But the burden of authentication does not require the proponent of the evidence to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be. Rather, the standard for authentication, and hence for admissibility, is one of reasonable likelihood. See United States v. McGlory, 968 F.2d 309, 328-29 (3d Cir. ___ ______________ _______ 1992), cert. denied, 113 S. Ct. 1388 (1993); United States v. _____ ______ _____________ Collado, 957 F.2d 38, 39 (1st Cir. 1992); see also 5 J. Weinstein _______ ___ ____ & M. Berger, Weinstein's Evidence 901(a)[01], at 901-19 (1994) ____________________ (explaining that the trial court should admit evidence as authentic "if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity"). Here, mindful of the deference accorded to the trial court's exercise of its discretion, we cannot say that the court erred in declaring the photocopy of the bank check to be ____________________ 14The handwritten invoice used the words "minus $2500, 12/29/88." 31 sufficiently authenticated, or in admitting it into evidence. 2. Hearsay. Appellant also suggests that, because the 2. Hearsay. _______ photocopy was introduced to prove the truth of the matter asserted, it was hearsay and, therefore, inadmissible unless it fell within one of the exceptions to the hearsay rule. We need not probe this point too deeply, for close perlustration of the record makes it plain that appellant never advanced this objection below. During the trial, appellant made a cluster of objections with regard to the photocopy of the bank check. However, these objections focused on authentication, and contained no developed argumentation in regard to hearsay principles. To be sure, defense counsel at one point called the photographs "totem pole hearsay," and, in a later colloquy, applied the same epithet to the photocopy. But we think that this elliptical reference carries little weight. Under prevailing federal practice, objections to evidentiary proffers must be reasonably specific in order to preserve a right to appellate review. See, e.g., United States v. Walters, 904 F.2d ___ ____ _____________ _______ 765, 769 (1st Cir. 1990); see also Fed. R. Evid. 103(a)(1). In ___ ____ other words, a litigant is obliged to "call [his specific objection] to the attention of the trial judge, so as to alert [the judge] to the proper course of action." United States v. _____________ Piva, 870 F.2d 753, 759 (1st Cir. 1989) (quoting Notes of the ____ Advisory Committee on Evidence Rule 103(a)). A lack of specificity bars the party aggrieved by the admission of the 32 evidence from raising more particularized points for the first time on appeal. See Walters, 904 F.2d at 769; Piva, 870 F.2d at ___ _______ ____ 759. The rule is not a mere technicality, but is solidly grounded in considerations of fairness and judicial economy. As we said in Walters, 904 F.2d at 769: "The reason for such a _______ requirement is to alert the trial court and the other party to the grounds of the objection so that it may be addressed or cured." Applying these precepts, appellant's hearsay argument is by the boards.15 B. The Photographs. B. The Photographs. _______________ The district court also permitted the prosecution to introduce nine photographs purporting to depict firearms that appellant illegally exported to China. Each photograph showed the serial number on the weapon portrayed therein. In the main, these serial numbers matched two other sets of serial numbers: the serial numbers of firearms that were transferred from ARMCO's inventory to appellant, and the serial numbers listed in wire transmissions from appellant to Wong. Agent Kelly testified that he received these photographs during a meeting with Wong in Hong Kong early in 1992. ____________________ 15Of course, even without a sufficient objection, appellant can obtain relief on appeal if the admission of the so-called "hearsay evidence" sinks to the level of plain error. See ___ Griffin, 818 F.2d at 99-100. There was no plain error here. See _______ ___ id. at 100 (describing plain errors as "those errors so shocking ___ that they seriously affect the fundamental fairness and basic integrity of the proceedings conducted below," or, put another way, those errors which must be noticed in order to prevent a "clear miscarriage of justice"). 33 In admitting the photographs, the district court stated: [B]ecause serial numbers appear on the photographs and can be compared with the serial numbers on other documents in evidence in this case, it would be an extraordinary inference that the guns that contained those serial numbers could have been assembled at a time before the documents were prepared that are in evidence here. * * * [A] fact finder may reasonably draw the inference that it's most unlikely that those guns came into the hands of somebody who could assemble them together, take those photographs and those photographs then came into the hands of the Government agent from some source that would undercut the inference that they were taken over by Steve Holmquist. Appellant inveighs against this assessment, asserting that the prosecution presented no evidence to show when, where, why, and under what circumstances the photographs were taken. This assertion is true but it is beside any pertinent point. A photograph's contents, buttressed by indirect or circumstantial evidence, can form a sufficient basis for authentication even without the testimony of the photographer or some other person who was present at the time it was taken. See, e.g., United ___ ____ ______ States v. Stearns, 550 F.2d 1167, 1171 (9th Cir. 1977); see also ______ _______ ___ ____ United States v. Clayton, 643 F.2d 1071, 1074 (5th Cir. 1981) ("A _____________ _______ witness qualifying a photograph need not be the photographer or see the picture taken; it is sufficient if he recognizes and identifies the object depicted and testifies that the photograph fairly and correctly represents it."). So here. At any rate, 34 the defense had a fair opportunity to cross-examine Kelly concerning both the delivery of the photographs and his lack of personal knowledge regarding their preparation. In the circumstances at hand, no more was exigible. We will not prattle. The lower court's assessment of the situation is plausible; indeed, it makes abundant sense. Based on it, the court concluded that the photographs were most likely authentic, and permitted their introduction into evidence. We think that this finding falls well within the realm of the court's discretion. V. CONCLUSION V. CONCLUSION We summarize succinctly. As for the importation statute, 18 U.S.C. 542, appellant's proposed interpretation of the materiality requirement is simply too restrictive; the better definition is one that accounts for the possible effects of false statements on the importation process as a whole. As for the in __ limine order, which affects only the export charges, appellant ______ failed to perfect the exclusion-of-evidence challenge he now seeks to advance. Finally, we find no merit in appellant's complaints about the admission of other evidence. We need go no further. Appellant's arguments are legally impuissant and, therefore, his convictions must be Affirmed. Affirmed. ________ 35