# United States Court of Appeals
## For the First Circuit

No.  01-1058

UNITED STATES OF AMERICA,

Appellee,

v.

CLIVE W. BAILEY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Frank H. Freedman, Senior U.S. District Judge]

Before

Selya and Lipez, Circuit Judges,
and Doumar, Senior District Judge.*

Terry Scott Nagel, for appellant.
Karen L. Goodwin, Assistant United States Attorney, with
whom James B. Farmer, United States Attorney, was on brief, for
appellee.

---

*Of the Eastern District of Virginia, sitting by
designation.

November 2, 2001

**DOUMAR, <u>Senior District Judge</u>**. Defendant-appellant Clive Bailey was convicted of conspiracy to possess with intent to distribute marijuana and of aiding and abetting others to do the same. 21 U.S.C. § 846 and § 841(a)(1) (1994); 18 U.S.C. § 2 (1994). He was sentenced to 262 months imprisonment. Bailey appeals his conviction on the ground that the District Court allowed inadmissible hearsay into his trial, and he appeals his sentence on the ground that the lower court's determination of drug quantity under a preponderance of the evidence standard elevated his sentence above the five year maximum for trafficking less than fifty kilograms of marijuana. He claims that this contravenes the rule laid down in <u>Apprendi</u> v. <u>New Jersey</u>, 530 U.S. 466 (2000). We affirm the lower court's evidentiary rulings and therefore the conviction, but vacate its application of the sentencing guidelines in light of the rule in <u>Apprendi</u> and remand the case for re-sentencing consistent with <u>Apprendi</u>.

I. BACKGROUND

On February 10, 1998, federal agents, pursuant to a warrant, searched a barrel that had been shipped from Los Angeles, California, to Springfield, Massachusetts, and found 93 pounds (42.18 kilograms) of marijuana. While this search was in progress, Maureen Washington came to collect the barrel.

-3-

Following conversations with the agents on the scene, Washington agreed to cooperate by having agents accompany her to deliver the barrel to its intended recipient. With two agents hidden in her van, she drove home where she made a telephone call to Clive Bailey's pager, punching in the code "411." Clive Bailey arrived within fifteen minutes, approached the van, and opened the rear door. He fled upon seeing the agents, but was apprehended. A search of Bailey's car yielded a pager displaying the number "411" on it. This pager indicated that the call originated from Washington's phone. Two barrels that were virtually identical to the one with 93 pounds of marijuana that Washington had come to pick up earlier that day were then found in Washington's apartment. While neither of these barrels contained any drugs, each of them had a distinct smell of marijuana. Bailey's palm print was found on the inside surface of the lid of one of those barrels. Bailey's defense was that he had been carrying on a romantic liaison with Washington, and that the "411" page was simply a code relating to that social relationship.

At trial, the government introduced three bills of lading and three delivery receipts, arguing that those documents linked the three barrels in the case to Bailey. The bill of lading for the barrel that was seized on February 10, 1998 was

dated February 1, 1998 and stated that the barrel was being sent from Crown Fashion in Los Angeles, California, to Mazie's Fashion and Accessories in Springfield, Massachusetts (Mazie's was later determined to be a fictitious company), and would be picked up at the dock. The delivery receipt for this barrel, signed by "Maureen Washington," stated that the barrel weighed 100 pounds. That barrel in fact contained 93 pounds of marijuana.

Another bill of lading, dated December 29, 1997, also described a barrel shipment from Crown Fashion to Mazie's Fashion. Like the earlier bill, this bill of lading stated that the barrel would be picked up at the dock. The delivery receipt corresponding to this bill of lading revealed that the barrel weighed 110 pounds and that it was paid and signed for by "Maureen Washington" on January 6, 1998.

A third bill of lading dated October 15, 1997, described a barrel shipment from Steinberg Originals in Los Angeles, California, to Bay State Work Shop in Springfield, Massachusetts, also to be picked up at the dock. The delivery receipt corresponding to this bill of lading stated that the barrel weighed 500 pounds and was signed for by "Maureen Washington."

A loading dock employee, Bonnie Susan Clark, was present when Maureen Washington picked up and paid for the barrel on February 10, the day that the agents intervened and Washington brought them to Clive Bailey. Clark recognized Washington as the person who picked up the October, 1997 and January, 1998 barrels. She could not, however, identify Washington in court.

Additionally, Clark remembered receiving a call shortly before the February, 1998 shipment, from a man who wanted to know if her company had received a shipment for Mazie's. Records showed that a call had been placed from Bailey's phone on February 6, 1998, four days before Washington came to pick up the barrel addressed to Mazie's with 93 pounds of marijuana. The government argued that the phone caller with an interest in the Mazie's delivery was Bailey himself.

Finally, the government introduced evidence that Bailey had a "connection" in California, one Seaford Colley, a California resident to whom several calls were made from Bailey's phone. The government also introduced a Western Union receipt showing that on June 23, 1997, Bailey had wired $2,500 to Colley in California.

In sum, the three barrels looked the same, they all came from California, and they were all signed for by "Maureen

Washington." One shipment even bore the same fictitious name and address for the consignee as the one seized on February 10. The two barrels found in Washington's home smelled of marijuana, and one had Bailey's palm print inside of it. Phone calls were made from Bailey's phone to the loading dock in Massachusetts four days prior to the shipment that was seized and to Seaford Colley in California, along with a wire transfer of $2,500 to Colley.

## II. THE EVIDENTIARY ISSUE

Washington disappeared prior to Bailey's trial. At trial, an agent testified to the actions Washington took following her agreement to cooperate. The agent testified that "after she [Washington] agreed to deliver [the barrel] to the intended recipient, she drove the van with two of our task force agents hiding in the back of the van to her residence." He further testified that she made a phone call to the "intended recipient" and punched in the code "411." Also at trial, the government introduced evidence that Bailey drove an expensive car yet was unemployed and had no other visible source of income. Bailey's attorney objected to the admission of this evidence, and Bailey now appeals.

On appeal, the district court's denial of Bailey's evidentiary objection on hearsay grounds is reviewed for abuse

of discretion.  United States v. Barone, 114 F.3d 1284, 1293 (1st Cir. 1997). Out of court statements offered not for their truth but "offered only for context," do not constitute hearsay. United States v. Catano, 65 F.3d 219, 224 (1st Cir. 1995).

> For example, an out-of-court statement might be offered to show that the declarant had certain information, or entertained a specific belief, or spoke a particular language; or it might be offered to show the effect of the words spoken on the listener (e.g., to supply a motive for the listener's action). See generally 5 Weinstein's Federal Evidence § 801.03[4], at 801-14.1 to 801-15 (2d ed.1999).

United States v. Murphy 193 F.3d 1, 6 n.2 (1st Cir. 1999).

In this case, the agent's testimony was not hearsay because it described conduct and provided context; it did not introduce statements for the truth of the matters asserted.  The agent described how Washington brought his colleagues and himself to the rendevous point and made a phone call summoning the "intended recipient."  This Court has held that directions from one individual to another, or statements offered only for context, do not constitute hearsay.  Catano, 65 F.3d at 224. Washington's making a phone call, and her driving the agents to the rendevous, was non-assertive conduct and outside the scope of the hearsay rule.  United States v. Mendez-deJesus, 85 F.3d 1, 3 n. 2 (1st Cir. 1996).  She did not orally identify Bailey; she summoned him by sending a page.  The agent did not testify that Washington pointed at Bailey or in any way made an out of

court declaration regarding his identity. In sum, this was not hearsay, so the district court did not abuse its discretion in admitting the testimony.

Regarding the testimony about Bailey's car and finances, at trial the government had an FBI agent testify that 1) to his knowledge, Bailey was unemployed, but 2) he had "certain fixed expenses," which included monthly payments on two car loans and on child support. Over Bailey's objection, the agent also testified that Bailey had purchased a Jeep Cherokee in July, 1996 and that it cost $30,000, and that his loan payments ranged from $700 to $1500.

According to the record, Bailey's objection to this evidence failed to state a ground. This court has held that "objections to evidentiary proffers must be reasonably specific in order to preserve a right to appellate review." United States v. Holmquist, 36 F.3d 154, 168 (1st Cir. 1994). In other words, a litigant is obliged to "call [his specific objection] to the attention of the trial judge, so as to alert [the judge] to the proper course of action." Id. (quoting Notes of the Advisory Committee on Evidence Rule 103(a)). A lack of specificity bars the party allegedly aggrieved by the admission of the evidence from raising more particularized points for the first time on appeal. Had Bailey asserted hearsay as a basis

during the trial, the government likely could have cured the objection by introducing business records of the car expenses. The result is a review for plain error, Id., at 168 n.15, which requires "errors so shocking that they seriously affect the fundamental fairness and basic integrity of the proceedings conducted below," or, put another way, those errors which must be noticed in order to prevent a "clear miscarriage of justice." Id.

In this case, the officer's testimony was duplicative of other documentary evidence, the substance of which Bailey has not contested. Testimony that is cumulative in nature and limited in scope cannot constitute plain error. Id. Moreover, this Court has held that "evidence that the defendant possessed or controlled substantial sums of money from unexplained sources is relevant in a prosecution for drug trafficking." United States v. Figueroa, 976 F.2d 1446, 1454 (1st Cir. 1992). It therefore could not have been plain error to admit this relevant and factually uncontested evidence into the trial. Therefore, the district court's evidentiary rulings are affirmed.

III. THE APPRENDI ERROR

Turning to the Apprendi issue, appellant's counsel indicated that if for any reason the Court did not agree with his contention that evidentiary errors in the district court

warranted a reversal and new trial, then the Court should remand for re-sentencing in light of the Apprendi violation that occurred. We think the defendant's position on this is well founded.

For its part, the government admitted both in briefs and at oral argument that an Apprendi error occurred at trial, but argues that it was harmless. We agree with its admission that the Defendant was sentenced in violation of the rule in Apprendi. We disagree, however, with its argument that the error was harmless, and for that reason we grant appellant's request by vacating the sentence and remanding for re-sentencing.

At the close of evidence in Bailey's trial, Bailey requested an instruction requiring the jury to determine the weight of drugs attributable to his conduct. The court declined to give this instruction because, at the time of trial (which was prior to the Apprendi decision), circuit precedent indicated that quantity was a factor only to be determined at sentencing. The court actually instructed the jury that it "need not be concerned with quantity." The jury returned a guilty verdict.

Apprendi was decided between the date of verdict and the date of sentencing. Over defense objections that the jury had not attributed a drug weight to Bailey's conduct, the court

found that Bailey was responsible for 319.9 kilograms of marijuana. The statutory maximum for this weight of drugs triggered an increase in Bailey's offense level under the Career Offender guidelines from 17 to 34. U.S.S.G. § 4B1.1. The Court then imposed a sentence of 262 months from the applicable 262 to 327 month range.

In Apprendi, the Supreme Court held that "other than the fact of prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490. Under 21 U.S.C. § 841(b)(1)(D), five years (60 months) is the maximum penalty for a violation of 21 U.S.C. § 841(a)(1) involving less than fifty kilograms of marijuana. According to our recent opinion, this five year penalty is the default statutory maximum for a violation of § 841(a)(1) involving less than fifty kilograms of marijuana. United States v. Duarte, 246 F.3d 56, 61 (1st Cir. 2001). Bailey's 262 month sentence obviously exceeds this default statutory maximum. Even if the statutory maximum sentences for each of the three counts of his conviction were run consecutively, see Duarte, 246 F.3d at 62, n.4, Bailey's total statutory maximum sentence would only equal 180 months, not 262 months, because each count involved less than fifty kilograms of

-12-

marijuana under <u>Apprendi</u> and <u>Duarte</u>.  Because Bailey's sentence was arrived at largely from the lower court's drug weight calculations and not from the jury's verdict, an <u>Apprendi</u> error occurred.  Unless the <u>Apprendi</u> error is harmless, as the government urges us to find, any sentence imposed in excess of the five-year default statutory maximum for a crime involving less than fifty kilograms of marijuana would have to be set aside.  <u>Neder</u> v. <u>United States</u>, 527 U.S. 1, 17 (1999).

Defining harmless error, the Supreme Court has held that "where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error," an erroneous instruction omitting the requirement that the jury find an element of the offense beyond a reasonable doubt is harmless.  <u>Id.</u>  This is a finding that we cannot make in this case. The error cannot be harmless where, as here, the defendant has contested the omitted element and the evidence is sufficient to support a contrary finding.  <u>Id.</u> at 19.

The government contends that the evidence compelled the jury to attribute at least 17.2 pounds of marijuana to Bailey from the two empty barrels discovered in Washington's apartment. In its view, that weight could take Bailey over the 110.2 pound

-13-

(50 kilogram) threshold of 21 U.S.C. § 841(b)(1)(C) and make his sentence conform with Apprendi because in that case the sentencing court would calculate his statutory maximum as three consecutive 240 month sentences.  U.S.S.G. § 5G1.2; see Duarte, 246 F.3d at 62 n.4.  While a judge could permissibly find those facts by a preponderance of the evidence, and a jury could permissibly find them beyond a reasonable doubt, it is not so clear that a reasonable jury must have found them beyond a reasonable doubt.  The two empty barrels were found not in Bailey's apartment, but in Washington's.  Accepting the fact that the "411" call to Bailey was a signal summoning Bailey to pick up the drug shipments, and that all the shipping documents establish a common mode of operation throughout the conspiracy, then why were those barrels not removed from Washington's possession once the marijuana was removed?  How much marijuana was in the barrels?  Obviously there was some, and the palm print on the inside of the lid ties Bailey to those barrels.

Most important, though, is the government's inability to prove how much marijuana was in the two barrels that simply smelled of marijuana.  To hold that a reasonable jury would have to find that they contained more than 17.2 pounds beyond a reasonable doubt would be arbitrary based on the evidence presented.  The government even admitted at oral argument that

it could not prove that the bills of lading offered into evidence corresponded to the two barrels discovered in Washington's apartment, so even its circumstantial evidence of the barrels' weight when shipped is problematic.

Moreover, who was to say how much other material was in the barrels other than marijuana? To say that the weight of drugs properly attributable to Bailey was supported by overwhelming evidence, as we must in order to find harmless error, is simply not possible given the facts of this case.

IV. CONCLUSION

In sum, while we affirm the lower court's denial of Bailey's evidentiary objections, we vacate the lower court's sentence on the basis of an <u>Apprendi</u> error that was not harmless. Therefore, Bailey is to be re-sentenced consistently with <u>Apprendi</u>.

<u>The defendant's conviction is affirmed, the sentence is vacated, and the case is remanded for re-sentencing as provided herein.</u>